IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UTE INDIAN TRIBE OF THE UINTAH AND OURAY RESERVATION, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>UTE DISTRIBUTION CORPORATION, et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PRELIMINARY INJUNCTION<br><br>Case No. 2:06CV557DAK<br><br>**Dale A. Kimball** |

This matter is before the court on the Ute Indian Tribe of the Uintah and Ouray Reservation ("Tribe") and Kirby Arrive's Motion for (I) Preliminary Injunction and (ii) Order Requiring Defendants to Provide Corporate Documents. Defendants received notice of the motion and filed an opposition to the motion. The court held a hearing on the motion on July 13, 2006. At the hearing, Plaintiffs were represented by Charles L. Kaiser and J. Preston Stieff, and Defendants were represented by Shawn E. Draney and Judith D. Wolferts. Having carefully considered the memoranda and other materials submitted by the parties, the arguments made at the hearing, and the law and facts relevant to the motion, the court renders the following Memorandum Decision and Order Granting Preliminary Injunction.

## BACKGROUND

The Tribe is the largest shareholder of the Ute Distribution Corporation ("UDC") with approximately twenty percent of the UDC's outstanding stock. After the Tribe advised the UDC Board of Directors that it was interested in acquiring more UDC shares, the Board of Directors proposed amendments to the UDC Articles of Incorporation. Plaintiffs object to proposed

amendments because they claim that some of the amendments will have the effect of limiting the Tribe's, or any member of the Tribe's, participation in the UDC.

The first proposed amendment would prohibit all members, employees, consultants, and advisors of the Tribe from being nominated for or serving on the UDC Board of Directors. The second proposed amendment would allow only members of the Board of Directors to nominate new directors, propose new corporate business, and carry out corporate functions. The third proposed amendment pertains to the removal of a member of the Board of Directors. Under the proposed amendment, removal of a member of the Board of Directors may be accomplished by a three-fourths majority of the other Board of Directors or by a two-thirds majority of the stockholders for "cause." "Cause" includes missing three or more meetings of the Board of Directors within a twelve-month period, being convicted of a felony, being declared incompetent by a court, or failing to meet any condition of eligibility for service as a member of the Board.

There is a long history regarding the relations between the Tribe and the UDC and disputes between the groups referred to as mixed bloods and full bloods.[1] In the Ute Partition Act, Congress terminated the Indian status of mixed blood members of the Tribe and provided for the partition and distribution of "the assets of the Ute Tribe . . . between the mixed-blood and full-blood members." 25 U.S.C. § 677. According to the Partition Act, assets that could not be distributed equitably, such as oil and gas, were to be jointly managed by the Tribal Business Committee for the full bloods and the authorized representative of the mixed bloods subject to

---

[1] The terms "mixed bloods" and "full bloods" are terms used by Congress, other courts, and the parties in their briefing to this court. A "full blood" member is an individual with at least "one-half degree of Ute Indian blood and a total Indian blood in excess of one-half." 25 U.S.C. § 677a(b). A "mixed blood" member is an individual who either did not possess the quantum of Indian or Ute blood to qualify as a "full blood," or a full-blood member who chose to become a mixed-blood member for purposes of termination. *Id.* §§ 677a(c), 677c.

the Interior's supervision. *See id.* §677i; *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 135 (1972).

The UDC is the mixed bloods' "authorized representative" referred to in the Partition Act. *See Affiliated Ute Citizens*, 406 U.S. at 135-36. The UDC was incorporated in 1958 with a stated purpose to "manage jointly with the Tribal Business Committee of the full-blood members of the Ute Indian Tribe . . . all unadjudicated or unliquidated claims against the United States, all gas, oil, and mineral rights of every kind, and all other assets not susceptible to equitable and practicable distribution to which the mixed-blood members of the said tribe . . . are now or may hereafter become entitled." UDC Articles of Incorporation ("Articles"), Article IV, Purpose.

Although the UDC is a Utah Corporation, the parties agree that when the UDC was formed its Articles of Incorporation and Bylaws were approved by the Department of the Interior. Stock in the UDC consists of 4900 shares, which represents ten shares for each of the 490 original mixed bloods appearing on the Department of Interior's rolls. Each share of stock is entitled to equal voting rights. Articles, Art. V, VIII. Interestingly, at the time the UDC was incorporated, the Articles and Bylaws both granted Tribal members a right of first refusal to purchase shares of stock sold by original mixed bloods. Articles, Art. VIII (mixed bloods selling their shares prior to August 1964 were required to "first offer it to the members of the tribe"). When such shares were transferred, the transferees were entitled to "acquire all rights to which a stockholder is entitled, including voting rights." Articles, Art. V.

On April 17, 2006, the UDC sent notice to all UDC shareholders that a shareholder's meeting would be held on July 15, 2006. The notice states that, among other matters of business, the proposed amendment to the Articles of Incorporation will be considered and voted on at the meeting. On May 31, 2006, the Tribe sent a letter to the UDC Board requesting that it

reconsider the proposed amendments to the Articles of Incorporation because they violate Utah and federal law. Pl. Mot. Prel. Inj. Ex. 8. In that letter, the Tribe also requested "that we meet immediately to discuss withdrawal of the charter amendments" and that they call as soon as possible to schedule the meeting. *Id.* The letter advised that "neither UDC nor the Tribe will be benefited [sic] by delay in the resolution of this matter or by the litigation that will result if we do not resolve our differences quickly and decisively." *Id.* The UDC Board advised the Tribe that it would not reconsider the amendments.

On June 16, 2006, an attorney for the Tribe sent a letter to the UDC regarding the annual meeting of the stockholders that requested an inspection of the UDC shareholder list and a copy of the current Bylaws. The UDC Board informed the Tribe that it was moving and that the Tribe's demand would be considered at a special meeting of the Board on June 30, 2006. On June 30, 2006, the Board advised the Tribe by telephone that the special meeting had been canceled and was rescheduled for July 10, 2006, only five days prior to the scheduled shareholders' meeting.

The Tribe brought this action in Utah State court on July 7, 2006, and filed a motion for preliminary injunction in that court. On July 10, 2006, the UDC removed the state court action to this court.

## DISCUSSION

### Plaintiffs' Motion for Temporary Restraining Order

Plaintiffs bring this motion requesting the court to (1) to enjoin the election on the proposed amendments to the Articles of Incorporation of the UDC at the currently scheduled July 15, 2006 meeting and (2) to order UDC to provide Plaintiffs with the most recent list of UDC shareholders and UDC's current bylaws. In order to obtain preliminary injunctive relief,

4

Plaintiffs must establish:

> (1) a substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

*SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991); *Hunsaker v. Kersh*, 991 P.2d 67, 69 (Utah 1999). Because a preliminary injunction is an extraordinary remedy, the "right to relief must be clear and unequivocal." *Id*

In applying the traditional "clear and unequivocal" standard to the four-part test, however, the court must recognize that "there is one slight wrinkle to th[e] four-factor test." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001). "If the party seeking the preliminary injunction can establish the last three factors listed above, then the first factor becomes less strict--i.e., instead of showing a substantial likelihood of success, the party need only prove that there are 'questions going to the merits ... so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.'" *Id.* at 1246-47 (quoting *Federal Lands Legal Consortium v. United States*, 195 F.3d 1190, 1194 (10th Cir. 1999)). Therefore, this court will determine whether Plaintiffs can meet each of the last three factors before analyzing the likelihood of success on the merits factor.

   **1. Irreparable Harm**

Plaintiffs argue that they have been irreparably harmed by Defendants' refusal to provide the current shareholder list and bylaws because they are being denied the right to effectively communicate with other shareholders regarding the proposed amendments to the Articles of Incorporation prior to the July 15, 2006 meeting. Therefore, they claim that they would suffer irreparable harm if the election were to proceed. Defendants claim that Plaintiff's delay in

seeking a preliminary injunction was unreasonable and does not demonstrate irreparable harm.

The Tenth Circuit has found that delay in bringing a motion for emergency relief is evidence that there is in fact no irreparable injury. *See GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984) ("'Although plaintiff contends that it will be irreparably harmed should defendants' activities not be enjoined, it has waited nearly a year before seeking any relief. Delay of this nature undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'") (citations omitted); *Kansas Health Care Assoc., Inc. v. Kansas Dep't of Soc. & Rehabilitation Servs.*, 31 F.3d 1536, 1544 (10th Cir.1994) ("As a general proposition, delay in seeking preliminary relief cuts against finding irreparable injury.")

Although Defendants allege the delay was unreasonable, the UDC contributed to that delay. Obviously a party is not going to seek an injunction if an agreement can be reached short of litigation. The Tribe sent a letter to the UDC in May requesting that the UDC reconsider the proposed amendments and requesting a meeting with the UDC. When the UDC refused, the Tribe requested copies of the shareholder list and Bylaws. Rather than immediately denying the request, the UDC stated that it would consider the request at a special meeting. Had the UDC complied with the request either in response to the June 16, 2006 letter or at the special meeting scheduled for June 30, 2006, the Tribe would have had time to communicate with other shareholders prior to the July 15, 2006 meeting. However, once the UDC canceled the June 30, 2006 special meeting and rescheduled it to July 10, 2006–only five days before the shareholders' meeting–the Tribe instituted this legal action. The court does not find the delay in seeking injunctive relief to be unreasonable. Nor does the court find that the delay caused by the Tribe's attempts to work with the UDC to obtain the requested relief undercuts a showing of irreparable

6

harm.

Defendants further argue that the harm Plaintiffs' claim they will suffer is not irreparable because Plaintiffs do not have a right to communicate with other shareholders prior to the election and, even if they did, Plaintiffs would still have the remedy of seeking to invalidate the results of the July 15, 2006 vote. However, if the shareholders are allowed to vote on the proposed amendments before Plaintiffs are able to provide any kind of information regarding the amendments, there would be no way of knowing how the vote would have turned out if all the shareholders had been aware of each party's positions with respect to the amendments. Moreover, Utah statutory law indicates that a court may summarily order the inspection of requested records and Plaintiffs made a request for the records a month before the scheduled meeting. Utah Code Ann. § 16-6a-710(3)(b). The statute indicates that injunctive relief may be appropriate in certain circumstances.

Although there may be no explicit right to communicate with other shareholders prior to an election, a shareholder wishing to educate other shareholders on differing points of view should not be frustrated in its attempts to do so by the mere fact that the Board of Directors has control over the list of names. There is a statutory right to the information provided the statutory provisions are met and there is an inherent duty of good faith and fair dealing that would apply in this context.

Defendants argue that the Tribe did not comply with Utah statutes in making its request for the shareholder list. A demand must be made in good faith and for a proper purpose. Utah Code Ann. § 16-6a-1602(3). Although Defendants attempted to argue at the hearing that one purpose for the Tribe's request for the list could have been to contact other shareholders in order to purchase their shares from them, it is obvious from the Tribe's letter to the UDC that the

request was being made in connection with the annual shareholders' meeting. The only reasonable inference from that statement is that they were seeking to communicate with others regarding the agenda items for that meeting. In addition, there is evidence before the court that the parties were in communication with each other on these issues. Under the circumstances, the court finds that the request was made with reasonable particularity as to the purpose to which the records would be used. And, in any event, this court can impose reasonable restrictions on the use of the information. Utah Code Ann. § 16-6a-1604(4). Therefore, the preliminary injunction order can limit the purpose for which the list is used and the amount of information provided to allay the concerns of the UDC.[2]

Accordingly, the court finds that the Tribe would be irreparably harmed if the vote on the proposed amendments occur before it is provided with the requested shareholder list.

**2. Balance of Harms**

Plaintiffs argue that if this court does not grant the preliminary injunction, it would suffer the irreparable harm described above, whereas the harm to the UDC would be only a minimal administrative inconvenience of delaying the vote on the proposed amendments. Defendants do not address the balance of harms prong and make no attempt to demonstrate that they would suffer greater harm than Plaintiffs if the injunction issues. The UDC has not provided any reason why the vote on the proposed amendments must occur on July 15, 2006. And, the issues or concerns the proposed amendments are designed to protect against appear to have been in existence for several years. The court finds that Plaintiffs would suffer a greater harm if the

---

[2] At the hearing on the motion, the UDC asserted that the Bylaws and all amendments to the Bylaws are provided to all UDC shareholders at the yearly meeting. Therefore, Plaintiffs should already be in possession of the most current Bylaws.

injunction does not issue than the UDC would suffer if the injunction does issue and the vote on the proposed amendments is delayed. The court, therefore, finds that this factor weighs in favor of Plaintiffs.

### 3. Public Interest

Under this factor, a court must conclude that issuance of the preliminary injunction would not be adverse to the public interest. Again, Defendants have not addressed this element. However, other courts have held that the issuance of a preliminary injunction is actually in the public interest when it "will further the interest of corporate democracy and shareholder participation in the management of" the corporation. *AHI Metnall, L.P. v. J.C. Nichols Co.*, 891 F. Supp. 1352, 1360 (W.D. Mo. 1995).

Similarly, the court finds that delaying the July 15, 2006 vote on the proposed amendments and allowing Plaintiffs to contact other shareholders for the sole purpose of informing them as to their position on the effect and consequences of the proposed amendments furthers corporate democracy and informed shareholder participation. Allowing time for the discussion and analysis of the proposed amendments before the shareholders vote on whether to approve the proposed amendments, therefore, is not adverse to the public interest.

### 4. Likelihood of Success on the Merits

Plaintiff argues that success on the merits is likely because the proposed amendments are unlawful in at least five respects: (1) the shareholders with connections to the Tribe are entitled to vote on the proposed amendment as a class because the amendments would create two classes of voters; (2) the proposed amendments unreasonably divest shareholders of voting rights and creates an advantage for incumbent directors such that it constitutes unlawful entrenchment; (3) the preclusion of tribal members as directors is an unreasonable and overly broad qualification;

(4) the disenfranchisement of Tribal members and entrenchment of the current Board violates Defendants' duty of good faith and fair dealing to Plaintiffs; and (5) the proposed amendments discriminate against Plaintiffs in violation of 42 U.S.C. § 1981.

Defendants argue that the UDC is not an ordinary business corporation and the purpose of the incorporation of the UDC as the authorized representative of mixed-blood members governs the decision with respect to the propriety of the proposed amendments. Defendants argue that the proposed amendments cannot be considered discriminatory because they are intended to protect the rights of mixed bloods as established under the Partition Act. Furthermore, Defendants argue that Plaintiffs' claims should have been brought as a shareholders' derivative action.

Because the court has determined that Plaintiffs have met the other three factors for the issuance of a preliminary injunction, Plaintiffs must only prove that there are serious questions going to the merits so as to make the issue ripe for litigation and deserving of more deliberate investigation. *See Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246-47 (10th Cir. 2001). Although the parties have presented conflicting positions on the merits of the case, the court finds that the Plaintiffs have met their burden of demonstrating serious questions that are deserving of more deliberate investigation through the litigation process.

Therefore, the court concludes that Plaintiffs have established the requisite elements for the issuance of a preliminary injunction with respect to a delay of the vote on the proposed amendments and Plaintiffs right to obtain the UDC shareholder list. Accordingly, for the foregoing reasons, Plaintiffs' motion for preliminary injunction is GRANTED.

## PRELIMINARY INJUNCTION ORDER

Because the court concludes that Plaintiffs have met the elements required for the issuance of a preliminary injunction, the court orders as follows:

(1) The proposed amendments to the UDC Articles of Incorporation shall not be considered at the scheduled July 15, 2006 UDC shareholders' meeting;

(2) The UDC shall provide a copy of the current shareholder list or make such list available for copying by Plaintiffs by July 25, 2006;

(3) Because the UDC had a reasonable basis for doubting the right of the Tribe to obtain certain information, the Tribe shall bear the cost of the copies;

(4) Plaintiffs shall use the list of shareholders solely for the purpose of contacting other shareholders to inform them of Plaintiff's position on the propriety and consequences of the proposed amendments to the UDC Articles of Incorporation;

(5) The shareholder list Plaintiffs receive need only include the shareholder's identity and current contact information (information regarding the number of shares a shareholder has appears to the court to be irrelevant for the requested purpose);

(6) Because the UDC Bylaws are distributed to all shareholders at yearly meetings and when amendments are added, there appears no need for a copy of the current Bylaws;

(7) The meeting to consider and vote on the proposed amendments to the UDC Articles of Incorporation shall occur sometime after August 25, 2006. The UDC Board of Directors shall determine the appropriate date after August 25, 2006, for the meeting and provide notice to all UDC shareholders of the date on which the meeting will be held no later than July 25, 2006.

(8)  Because Defendants have not alleged that any harm will come to them if this preliminary injunction is issued, Plaintiffs are not required to post any bond or security for its issuance

DATED this 14th day of July, 2006.

> BY THE COURT:
>
> /s/ Dale A. Kimball
> DALE A. KIMBALL
> United States District Judge