IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

---

UTE INDIAN TRIBE OF THE UINTAH
AND OURAY RESERVATION, et al.,

                      Plaintiffs,

vs.

UTE DISTRIBUTION CORPORATION,
et al.,

                      Defendants.

**MEMORANDUM DECISION
AND ORDER**

**Case No. 2:06CV557DAK**

**Dale A. Kimball**

---

This matter is before the court on the Ute Indian Tribe of the Uintah and Ouray

Reservation ("Tribe") and Kirby Arrive's Motion to Dismiss Counterclaims and Defendant Ute

Distribution Corporation's ("UDC") Motion to Amend.  The court held a hearing on the motions

on January 5, 2007.  At the hearing, Plaintiffs were represented by Charles L. Kaiser, and

Defendants were represented by Scott H. Martin.  Having carefully considered the memoranda

and other materials submitted by the parties, the arguments made at the hearing, and the law and

facts relevant to the motion, the court renders the following Memorandum Decision and Order.

## BACKGROUND

The Tribe is the largest shareholder of the UDC.  It brought this action when the UDC

Board of Directors proposed amendments to the UDC Articles of Incorporation that would

allegedly have the effect of limiting the Tribe's, or any member of the Tribe's, participation in

the UDC.  The Complaint alleges that the proposed amendments would prohibit anyone affiliated

with the Tribe from serving on the UDC Board of Directors, would allow only members of the Board of Directors to nominate new directors, propose new corporate business, and carry out corporate functions, and would allow removal of a member of the Board of Directors only by a three-fourths majority of the other Board of Directors or by a two-thirds majority of the stockholders for "cause."

The court previously granted a motion for preliminary injunction on behalf of the Tribe in this case. Following a stay imposed by the court, UDC filed its Answer and Counterclaims. The UDC's four counterclaims against the Tribe raise issues that appear to be unrelated to the proposed Articles of Incorporation. The UDC claims that the Naval Oil Shale Reserve No. 2 lands that Congress conveyed to the Tribe in 2000 are an indivisible asset which should be jointly owned and managed under the Ute Partition Act. Second, the UDC seeks a declaratory judgment defining the scope of the mixed-bloods' rights to hunt and fish on Tribal lands, including the use of all-terrain vehicles. Third, the UDC claims that the Tribe has violated its duty of loyalty and fiduciary duty to the UDC by not recognizing mixed bloods' hunting and fishing rights and by not transferring an interest in NOSR-2 lands to the UDC. Fourth, on the same grounds, the UDC claims that the Tribe breached a duty of good faith and fair dealing. The UDC also asserts a claim against Mr. Arrive which claims that he breached his duty of loyalty and fiduciary duty to the UDC, to other UDC shareholders and to the original 490 mixed-bloods because he holds his share of UDC stock in name only and returns all dividends to the Tribe.

## DISCUSSION

### I. Plaintiffs' Motion to Dismiss Counterclaims

Plaintiffs move to dismiss the counterclaims on the ground that the Tribe has not waived sovereign immunity and Mr. Arrive has no duty of loyalty or fiduciary duty to the UDC or other

UDC shareholders.

### A.  Claims Against the Tribe

Although the Tribe argues that sovereign immunity applies, the UDC argues that sovereign immunity does not apply because the Tribe owns shares as a corporation.  The UDC claims that the name on the shareholder list is Ute Indian Tribe, which is the same name as a corporation formed by the Tribe in 1938, but the Tribe officially goes by Ute Indian Tribe of the Uintah and Ouray Reservation.  The UDC asserts that the corporate charter for the Ute Indian Tribe also states that the corporation is authorized to handle "property of every description," whereas the Tribe's Constitution gives the Tribe the authority primarily to deal with real property.   In addition, the UDC reasons that the corporate charter gives the corporation the authority to sue and be sued, whereas the Tribe's Constitution does not speak to such a right.  However, the Tribe asserts that it owns its UDC shares as a political entity and not as a corporate entity.

References to the Tribe as the Ute Indian Tribe do not necessarily mean that the Tribe is acting as a corporation under a 1938 corporate charter relied upon by the UDC.  The Tribe, this court, the Tenth Circuit, and other entities routinely refer to the Tribe as the Ute Indian Tribe when referring to the Tribe as a political entity.  The Tribe's current Financial Advisor submitted an Affidavit stating that the Tribe does not own its UDC shares in the 1938 charter corporation or any other such corporation.  That conclusion is confirmed by the Tribe's financial statements as audited by independent third-party accountants.  The Tribe's financial statements for the "Ute Indian Tribe" are audited using "generally accepted accounting principles . . . applicable to government units" and state that "the Tribe owns 875 shares of Ute Distribution Corporation common stock."  The Financial Statement furthers states that the dividends from those UDC

shares are "included in the General Fund," which is the Tribe's account for "governmental financial resources."

There is also a Tribal resolution directing who may vote the Tribe's UDC shares. Resolution No. 04-173 (July 13, 2004) provides that "Whereas, the Ute Tribe of the Uintah and Ouray Reservation (the "Tribe) owns of record 874 shares of common stock of Ute Distribution Corporation . . . [;] and whereas, the Tribe wishes to vote the shares of UDC that it owns directly[;] Now, therefore, be it resolved, that Maxine Natchees, Chairman of the Tribal Business Committee of the Tribe, is authorized to vote on behalf of the Tribe the 874 shares of UDC held on the records of UDC under the name 'Ute Indian Tribe.'"

The only documentary evidence presented to the court supports the Tribe's position that it holds its UDC shares as a political entity rather than a corporate entity.  The UDC's arguments are merely assertions or speculation as to which entity owns the stock.  However, the court concludes, based on the evidence submitted by the Tribe, that there is no question of fact as to whether the Tribe owns the stock as a corporate entity.

In any event, the UDC's counterclaims assert claims for action and inaction the Tribe allegedly undertook or failed to undertake in its capacity as a political governing body. Specifically, determining who may hunt and fish on Tribal lands and how they may do so is the paradigm of a governmental entity acting as a political governing body.  The Big Game Proclamation which UDC seeks to challenge was issued by the Tribe in its political capacity.  In addition, UDC's attempt to force the Tribe to convey an interest in NOSR-2 lands is an action against the Tribe in its political capacity because the lands are owned by the Tribe.  These lands were conveyed by Congress to the Tribe in its political capacity.  Therefore, none of the counterclaims require the corporate entity to be named as a party to the action.

Because the court concludes that there is no issue with respect to the Tribe's ownership of the stock, it must determine whether the Tribe is immune from suit with respect to the UDC's counterclaims. "Indian tribes have long been recognized as possessing the common law immunity from suit traditionally enjoyed by sovereign powers." *Ute Distribution Corp. v. Ute Indian Tribe*, 149 F.3d 1260, 1263 (10th Cir. 1998). Any such waiver must be "unequivocally expressed." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). In addition, the Supreme Court has recognized that "a tribe does not waive its sovereign immunity from actions that could not otherwise be brought against it merely because those actions were pleaded in a counterclaim to an action filed by the tribe." *Oklahoma Tax Comm'n v. Potawatomie Indian Tribe*, 498 U.S. 505, 509 (1991). This court recognized that that rule applies even to compulsory counterclaims under Rule 13(a). *Macarthur v. San Juan County*, 391 F. Supp. 2d 995, 1036 (D. Utah 2005).

The UDC argues that the Tribe incorrectly perceives its sovereign immunity as a broad impenetrable shield lifted only on the Tribe's or Congress's determination. The UDC points this court to previous cases in which equitable claims or claims seeking declaratory and injunctive relief have been allowed. In *Comstock Oil & Gas Inc. v. Alabama and Coushatta Indian Tribes of Texas*, 261 F.3d 567 (5th Cir. 2001), the court rejected the defendant's sovereign immunity argument and held that tribal immunity did not bar a suit in equity for declaratory and injunctive relief. The UDC contends that its counterclaims are not barred because they seek only declarations regarding the Tribe's duties and obligations under federal law and such relief is only equitable relief.

Although the UDC claims that the Supreme Court and circuit courts have found that tribal immunity does not bar claims for declaratory and equitable relief, it relies only on the Fifth Circuit and a concurring opinion by Justice Stevens from the Supreme Court in *Oklahoma Tax*

*Comm'n v. Citizen Band of Potawatomie Indian Tribe*, 498 U.S. 505 (1991).   The exception for

equitable relief sought by UDC cannot be squared with *Ute Distribution Corp. v. Ute Indian*

*Tribe*, 149 F.3d 1260 (10th Cir. 1998), where the Tenth Circuit held that "UDC's action seeking

declaratory judgment that certain water rights were not partitioned" was barred by sovereign

immunity.  *Id.* at 1262.   In *Ute Indian Tribe*, the Tenth Circuit discussed the Tribe's sovereign

immunity from claims made by the UDC and held that an action by UDC against the Tribe for

equitable relief was barred by sovereign immunity.

The Tenth Circuit also rejected UDC's equitable relief argument in *In re Mayes*, 294 B.R.

145, 154-55 (10th Cir. BAP 2003), concluding that it was "without merit."  In *Mayes*, the

appellant argued that his motion merely sought declaratory relief and sovereign immunity does

not apply.  The court, however, rejected the claim and held that "Appellant's 'form of relief'

argument is without merit" because "the nature of the relief sought is irrelevant to the question

whether the suit is barred by sovereign immunity."  *Id.* at 155.

The Tenth Circuit also rejected Justice Steven's concurrence in *Potawatomie* when the

case was remanded.  The Tenth Circuit stated that "[w]hile Justice Stevens suggested that 'a

tribe's sovereign immunity from actions seeking money damages does not necessarily extend to

actions seeking equitable relief, this view was not shared by any other member of the Court and

was implicitly rejected [by] the majority."  *Citizen Band Potawatomie Indian Tribe v. Tax*

*Comm'n*, 969 F.2d 943, 948 n.5 (10th Cir. 1992).  Accordingly, the Tenth Circuit held that to the

extent the appellant "asks us to adopt Justice Stevens' position, we reject it."  *Id.*

UDC also claims that it fits within the exception for equitable relief because "UDC's

counterclaims against the Tribe seek only to establish by declaration of this court the contours of

the Tribe's powers in the federally mandated joint management of undistributed assets, the

restriction of hunting and fishing access, and the handling of NOSR-2 lands [and do] not seek to . . . realize a monetary judgment."  The Tribe, however, contends that the UDC's assertion flies in the face of the plain language of the UDC's counterclaim which "seeks *damages* for the Tribe's breach of its duty of loyalty, breach of fiduciary duty, and breach of good faith and fair dealing, in an amount to be determined at a jury trial." (Emphasis added.)

        In this case, the UDC's counterclaims are not compulsory counterclaims and fall clearly within the sovereign immunity bar.  The UDC's hunting and fishing and NOSR-2 allegations are unrelated to the proposed amendments to the UDC Articles of Incorporation challenged by the Tribe.  The Tenth Circuit has specifically found in previous litigation that Congress did not waive the Tribe's sovereign immunity for claims made by the UDC directed at joint management of assets under the Ute Partition Act.  *UDC v. Ute Indian Tribe*, 149 F.3d at 1264.  This court concludes that the Tribe is entitled to sovereign immunity with respect to the UDC's counterclaims.  Accordingly, the Tribe's motion to dismiss the counterclaims asserted against it is granted.

### B.  Counterclaims Against Arrive

        With respect to the claim against Arrive, Plaintiffs argue that minority shareholders do not have a fiduciary duty or duty of loyalty to other shareholders or to the corporation.  *See* 12B Fletcher Cyclopedia Corporations, § 5713 (2000).  Arrive owns a single share of UDC stock.  He argues that even if he did owe UDC and other shareholders a fiduciary duty, UDC has not alleged a breach of that duty.  UDC alleges as a breach that Arrive returns all his UDC dividends to the Tribe and holds his UDC shares in name only in an attempt to diminish the rights of the UDC shareholders and the original 490 mixed-bloods.  For relief, the UDC asks the court to require Arrive to return his share of UDC stock to the Tribe.

The UDC argues that Arrive has a duty of loyalty and fiduciary duty because the UDC is a close corporation and that each and every UDC shareholder owes to one another a duty of loyalty and good faith in pursuit of a common purpose.   However, the UDC is a Utah Corporation.  Although the Utah Supreme Court has "decline[d] to set an arbitrary ceiling on the number of shareholders that a corporation may have before it becomes ineligible for treatment as a closely held corporation," "120 shareholders . . . substantially exceed the number of shareholders" permitted in a close corporation.  *Dansie v. City of Herriman*, 134 P.3d 1139, 1145 (Utah 2006).

Because the UDC has many more shareholders than those at issue in *Dansie,* the UDC is not a close corporation and Arrive does not have those fiduciary duties imposed upon shareholders of a closely held corporation.  Moreover, the court concludes that even if Arrive did owe a duty to the other shareholders and the corporation, the allegations are not sufficient under the law to demonstrate a breach.  The court, therefore, grants Plaintiffs' motion to dismiss the claim against Arrive.

## II.  The UDC's Motion to Amend

The UDC filed a motion for leave to amend its Answer and Counterclaim in the event that the court granted the Tribe's Motion to Dismiss.  The UDC's seeks leave to name the Tribe's corporate entity as a party and to name the six members of the Tribe's Business Committee. UDC claims that these members are responsible for failing to deliver possession of the NOSR-2 lands and their value to the UDC.  They are also responsible for impeding federally mandates joint management of undistributed assets and for directing the diminishment of mixed-blood hunting/fishing access on Tribal lands.

In response, the Tribe requested that the Court stay its response on the merits and direct the UDC to pursue any third-party complaint or amendments to its original pleading after the court issues its decision on the Tribe's Motion to Dismiss.

Based on the court's rulings above, the amendment to name the Tribe's corporate entity appears to be moot. The Tribe does not hold its UDC shares as a corporate entity. In addition, the UDC's counterclaims related to actions by the Tribe as a political entity.

Because of the Tribe's request to delay briefing on this issue, the propriety of bringing an action against the members of the Tribe's Business Committee has not been fully briefed by the parties. However, the UDC's proposed pleading asserts for the first time a third-party complaint against the members of the Business Committee. A counterclaim can be directed only at existing Plaintiffs. Rather than request leave to file an amendment to its Counterclaim, the UDC should file a motion for leave to file a third-party complaint under Federal Rule of Civil Procedure 14(a). Accordingly, the UDC's motion to amend is denied.

## CONCLUSION

Based on the above reasoning, Plaintiff's Motion to Dismiss Counterclaim is GRANTED, and Defendant's Motion to Amend is DENIED.

DATED this 23rd day of April, 2007.

_____
DALE A. KIMBALL,
United States District Judge