IN THE UNITED STATES JUDICIAL DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UTE INDIAN TRIBE OF THE UINTAH AND OURAY RESERVATION and KIRBY ARRIVE,<br><br>Plaintiffs,<br><br>v.<br><br>UTE DISTRIBUTION CORPORATION and UTE DISTRIBUTION CORPORATION BOARD OF DIRECTOR MEMBERS LOIS LAROSE, CHARLES DENVER, LYNN MCCLURE, PALA NELSON, and REBECCA CURRY, in their individual and official capacities,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION REQUESTING CLARIFICATION OF SCOPE OF DISCOVERY**<br><br>Case No. 2:06 CV 00557 DAK<br><br>District Judge Dale A. Kimball<br><br>Magistrate Judge David Nuffer |

Defendants have moved for clarification of the scope of discovery in this case. At a scheduling conference where some discussion of this issue occurred,[1] the magistrate judge suggested the parties must file a motion since the case was not referred at that time for anything other than scheduling. Since that time, the motion was filed[2] and the case was referred for pretrial management.[3]

**Nature of the Parties**

The relevant background on the relationships of the Plaintiff Ute Indian Tribe of the Uintah and Ouray Reservation (Tribe) and Defendant Ute Distribution Corporation (UDC) is well explained in the order granting a preliminary injunction.[4] Essentially, both entities are federally established – the Tribe representing persons whose ancestry is principally Ute Indian

---

[1] Docket no. 46, filed September 5, 2007.
[2] Docket no. 49, filed October 11, 2007.
[3] Docket no. 51, filed October 22, 2007.
[4] Memorandum Decision and Order Granting Preliminary Injunction at 1-3, docket no. 10, filed July 14, 2006.

and UDC representing other persons with less Ute Indian ancestry. While that background is critical to the decision in this order, it will not be repeated here.

## Nature of the Dispute

The preliminary injunction order also recounts basic facts about the current dispute between the parties, arising out of proposed amendments of UDC's Articles of Incorporation.[5] One of the proposed amendments "would prohibit all members, employees, consultants, and advisors of the Tribe from being nominated for or serving on the UDC Board of Directors."[6] While a preliminary injunction temporarily blocked adoption of the amendments, they were approved by a special shareholders' meeting in October 2006.[7]

The Tribe's Complaint asserts: "(a) that the proposed director qualifications . . . are not reasonable; (b) breach of covenant of good faith and fair dealing in that the UDC's Articles of Incorporation and bylaws are a contract with the Tribe; and (c) racial discrimination pursuant to 42 U.S.C. § 1981."[8] UDC alleges that the amendments are necessary to maintain the statutorily mandated role of the UDC as a representative of persons who are not Tribe members, and the statutory mandate that the UDC and Tribe – representing disparate but related interests – "work together to jointly manage oil and gas and other undistributed Tribal assets."[9] UDC enumerates many Tribe actions and inactions that UDC claims justify the amendments.[10] Most of these involve certain lands subject to joint administration (or at least joint interest) between the Tribe and UDC and Tribe regulation of hunting and fishing rights of UDC members on Tribe land.

---

[5] *Id.* at 3-4.
[6] *Id.* at 2. Defendants refer to these amendments as being proposed for UDC's bylaws. Memorandum in Support of Motion Requesting Clarification of Scope of Discovery (Supporting Memorandum) ¶21 at viii, docket no. 50, filed October 11, 2007.
[7] *Id.* at ix.
[8] *Id.* at viii, citing Complaint ¶¶ 43-54.
[9] Supporting Memorandum at v.
[10] *Id.* ¶¶16-28 at v-vii.

**Proposed Discovery – Dismissed Counterclaim**

UDC proposes to undertake discovery on these topics. However, some of these subjects were treated in a UDC counterclaim which was dismissed by the district judge due to the Tribe's sovereign immunity.[11] As characterized by the district judge there were four counterclaims:

> The UDC claims that the Naval Oil Shale Reserve No. 2 lands [NOSR-2 lands] that Congress conveyed to the Tribe in 2000 are an indivisible asset which should be jointly owned and managed under the Ute Partition Act. Second, the UDC seeks a declaratory judgment defining the scope of the mixed-bloods' rights to hunt and fish on Tribal lands, including the use of all-terrain vehicles. Third, the UDC claims that the Tribe has violated its duty of loyalty and fiduciary duty to the UDC by not recognizing mixed bloods' hunting and fishing rights and by not transferring an interest in NOSR-2 lands to the UDC. Fourth, on the same grounds, the UDC claims that the Tribe breached a duty of good faith and fair dealing.

The district judge found that "the Tribe is entitled to sovereign immunity with respect to the UDC's counterclaims."[12]

**Tribe Arguments Against Proposed Discovery**

**1 - Sovereign Immunity**

The Tribe first asserts that the dismissal of the counterclaims prohibits discovery on these subjects. "Judge Kimball's decision that UDC is barred by Tribal sovereign immunity from asserting NOSR-2 and hunting and fishing claims means that UDC is also barred on sovereign immunity grounds from conducting discovery on those issues."[13]

The Tribe cites two cases in support of its position that *discovery* is barred by sovereign immunity. Each of these cited cases can be distinguished from the present case which was *filed by the Tribe.*

---

[11] Memorandum Decision and Order (Memorandum Decision and Order), docket no. 40, filed April 23, 2007.
[12] *Id.* at 7.
[13] Plaintiffs' Response to Ute Distribution Corporation's Motion Requesting Clarification of Scope of Discovery (Opposition Memorandum) at 7, docket no. 54, filed November 5, 2007.

The first cited case was a criminal case against an individual tribal member where the tribe was a mere witness.[14] Because of sovereign immunity the court quashed a subpoena issued on behalf of the defendant seeking documents from the Tribal Department of Health and Social Services. The Tribal Housing Authority had voluntarily provided some documents to the government and the court said it would not have quashed a subpoena directed to that entity because sovereign immunity over those documents had already been waived. But the Departments Health and Social Services was a separate entity. In this suit filed by *the Tribe*, *the Tribe* has waived immunity as to permissible discovery. Obviously, the *scope* of discovery is a legitimate inquiry, but sovereign immunity will not itself bar discovery.

The second case involved a discovery proceeding annexed to a habeas corpus petition filed when tribe members were dis-enrolled.[15] They sought discovery from the tribe, but the magistrate judge granted the tribe's motion to quash. "Because there is no express waiver of immunity by the tribe or abrogation of tribal immunity by Congress under the ICRA and there is no support for an implied waiver of immunity, the Court finds that the Tribe was possessed of tribal immunity at the time the subject subpoenas were served."[16] A key in the decision was that "virtually identical . . . document requests [were] issued to the individual Respondents" and "the Court cannot conceive of any relevant information Petitioners could obtain from the Tribe that they cannot obtain from the Respondents."[17] The cited case was initiated by the party seeking discovery, not by

---

[14] *United States v. James*, 980 F.2d 1314 (9th Cir. 1992), *cert. denied*, 510 U.S. 838 (1993).
[15] *Quair v. Buga*, 388 F. Supp. 2d 1145 (E.D. Cal. 2005).
[16] *Id.* at 1148
[17] *Id.*

4

the tribe, and is different than this present case in which the Tribe has brought the dispute to this forum. The Tribe cannot file suit and then claim immunity from discovery.

The Tribe also asserts that hunting and fishing rights may not be discussed in this court "because wildlife is owned in a sovereign capacity"[18] and therefore beyond the competence of the court, and that these rights are more properly addressed in an administrative process.[19] The court will not *adjudicate* hunting and fishing rights in this case, but will determine whether the *disputes* on those issues demonstrate that the inherently disparate roles of the parties need to be protected and preserved by the disputed amendments. This is not beyond the competence of the court and does not usurp any administrative procedure.

## 2 - Relevance

Second, the Tribe asserts that Judge Kimball has declared the proposed discovery topics irrelevant to the amendments. "Judge Kimball held that '[t]he UDC's hunting and fishing and NOSR-2 allegations are unrelated to the proposed amendments to the UDC Articles of Incorporation challenged by the Tribe.' "[20] He also said the issues in the counterclaims "appear to be unrelated to the proposed Articles of Incorporation."[21] As UDC points out, "Judge Kimball's Order says nothing about discovery, and deals only with sovereign immunity."[22]

---

[18] Opposition Memorandum at 9.
[19] *Id.* at 9
[20] *Id.* at 7
[21] Memorandum Decision and Order at 2.
[22] Reply Memorandum in Support of Motion Requesting Clarification of Scope of Discovery at 5, docket no. 546, filed November 13, 2007.

Judge Kimball's conclusion that the hunting and fishing and NOSR-2 allegations are "unrelated" was made as he finished analyzing whether the UDC counterclaims were compulsory, which would have weighed in favor of finding a waiver of immunity.

> In this case, the UDC's counterclaims are not compulsory counterclaims and fall clearly within the sovereign immunity bar.  The UDC's hunting and fishing and NOSR-2 allegations are unrelated to the proposed amendments to the UDC Articles of Incorporation challenged by the Tribe.[23]

This statement reflects the analysis that *adjudication* of the actual hunting and fishing and NOSR-2 rights was not essential to *adjudication* of the suit the Tribe has brought.  But the existence of *disputes* between UDC and the Tribe – on those and other subjects – appear to bear on the merits of the Tribe's defenses in this suit.  The ultimate decision on actual relevance of those factual scenarios will be determined by the district judge at trial, but they are legitimate areas for discovery.

### 3 – Overbroad

Finally, the Tribe objects that the scope of proposed discovery is overbroad.  Defendants asked for too much when they said they "are entitled to conduct discovery *on anything that bears on the conduct of the Tribe* (including Tribal Business Committee) *with regard to the UDC and undistributed assets, as well as joint management of those assets*, including but not limited to NOSR-2 lands and hunting/fishing."[24]  This definition of the scope of discovery is overbroad.  The list of disputes provided in Defendants' statement of facts[25] more appropriately describes topics that might be subject of discovery.  That list illustrates the essence of UDC's claim that inherently disparate roles for the Tribe and UDC justify the amendments.

---

[23] Memorandum Decision and Order at 7.
[24] Supporting Memorandum at 1. (emphasis added).
[25] Supporting Memorandum ¶¶16-28 at v-vii.

6

## Conclusion

Certainly as discovery is proposed, if disputes as to scope arise, the parties should meet, confer and if necessary make motions. But the scope of discovery will not be limited to exclude topics raised in the dismissed counterclaims.

## ORDER

**IT IS HEREBY ORDERED** that the Motion for Clarification of Scope of Discovery[26] is GRANTED. Discovery will not be barred simply because the subject matter is within the dismissed counterclaims. Any discovery on those topics should focus on the *existence* of those disputes and their *relationship* to the amendments to the Defendant corporation's articles.

Dated this 3rd day of January , 2008.

BY THE COURT:

_____
David Nuffer
United States Magistrate Judge

---

[26] Docket no. 51, filed October 22, 2007.